FILED
2015 Jul-24  PM 03:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SHANNON HENDON, }<br><br>    Plaintiff, }<br><br>v. }<br><br>KAMTEK, Inc., et al., }<br><br>    Defendants. } | CIVIL ACTION NO.<br><br>2:14-cv-2255-WMA |

## MEMORANDUM OPINION

Before the court is the joint motion of defendant Kamtek, Inc. ("Kamtek") for summary judgment under Fed. R. Civ. P. 56 and for dismissal under Fed. R. Civ. P. 12(b)(6) (Doc. 11). For the reasons explained below, the motion to dismiss will be granted, mooting the motion for summary judgment.

### BACKGROUND[1]

Plaintiff Shannon Hendon is an African-American female over the age of 40. (Doc. 1 at 3, ¶ 9). She was employed by defendant Personnel Staffing, Inc. ("PSI") from April 2013 to December 2013. (Docs. 1 at 3-4, ¶¶ 9 & 13, 11 at 4, ¶ 7). PSI provides temporary personnel, known as PSI Associates, to Kamtek. (Docs. 1 at 3, ¶ 9, 11 at 3, ¶ 2). PSI also provides Kamtek with on-site management

---

[1]Because of the dual nature of Kamtek's motion, the facts are taken both from Hendon's complaint and from Kamtek's motion for summary judgment. To the extent factual inferences are drawn, they are drawn in favor of Hendon. See *M.T.V. v. DeKalb Cty. Sch. Dist.*, 446 F.3d 1153, 1156 (11th Cir. 2006); *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000).

personnel, known as On-Site Supervisors or Human Resource Managers, who are responsible for coordinating the operations of PSI's associates and administering drug screenings. (Docs. 1 at 3, ¶ 9, 11 at 4, ¶ 5). Hendon was an On-Site Supervisor. (Docs. 1 at 3, ¶ 9, 11 at 4, ¶ 6).

As an On-Site Supervisor, Hendon worked on Kamtek's premises, but her office was located in a trailer designated specifically for PSI use. (Doc. 11 at 4-5, ¶ 10). Although there was obviously interaction with Kamtek employees, Hendon was not supervised by any Kamtek employees. (Doc. 11 at 5, ¶ 12). Her personnel file was maintained only by PSI, and PSI was entirely responsible for her compensation. (Doc. 11 at 5-6, ¶¶ 14, 16).

In September 2013, Hendon was contacted by Arthur Thomas, an African-American Kamtek employee. (Doc. 1 at 4, ¶ 10). Thomas complained to Hendon that he had been discriminated against when taking a drug test. *Id.* Whether he was complaining against PSI, or against Kamtek, or against both, is unclear. According to Thomas, he was only given 45 minutes to produce a urine sample but could not do so, while white employees had been given up to two hours to produce a sample. (Doc. 1 at 4, ¶¶ 10-11). Thomas was terminated by Kamtek and was orally given his failure to provide a urine sample as the reason for his termination. At his termination hearing, he mentioned that Hendon had knowledge of white employees who were not terminated after having failed a drug test or after being unable to

produce a timely urine sample. (Doc. 1 at 4, ¶ 12).

On December 5, 2013, PSI fired Hendon. (Docs. 11 at 6, ¶ 20, 19-2 at 2). The reason given on the written termination notice was: "Client requested restructure of on-site personnel." (Doc. 19-2 at 2). Kamtek is unquestionably the client to which this notice referred. Hendon was thereafter replaced by a younger male employee. (Doc. 1 at 5, ¶ 15). Kamtek contends that it was not involved in PSI's decision to terminate Hendon and was not even aware of the decision until after the termination had taken place. (Doc. 11 at 6-7, ¶¶ 21-23). Kamtek also had nothing to do with PSI's choice of a replacement for Hendon.

On December 11, 2013, Hendon filed a charge of discrimination with the EEOC against Kamtek and PSI. (Doc. 1-1 at 6). She received right-to-sue letters on August 22 and 26, 2014. (Doc. 1-1 at 2, 4). She filed this lawsuit on November 20, 2014. In her complaint, she alleges that she was discriminated against based on her race (in violation of Title VII and 42 U.S.C. § 1981), on her sex (in violation of Title VII), and on her age (in violation of the ADEA).

PSI and Kamtek filed motions in response to Hendon's complaint. PSI moved to compel arbitration. The court granted its said motion on March 2, 2015, and the above entitled action as to PSI is currently stayed pending arbitration. (Doc. 14). Kamtek moved for summary judgment under Fed. R. Civ. P. 56, or, in the alternative, for a dismissal under Fed. R. Civ. P. 12(b)(6). In its

summary judgment motion, Kamtek contends, *inter alia*, that it cannot be liable because it was not Hendon's employer. The employment discrimination statutes relied upon by Hendon do not give this court jurisdiction over the conduct of non-employers. In its motion to dismiss, Kamtek also argues that Hendon's complaint does not allege facts to show that Kamtek discriminated against her based on her race, or based on her sex, or based on her age, and that her complaint fails to state a viable claim based on her association with Arthur Thomas. She does not even attempt to mount a claim of retaliation.

On May 12, 2015, the court ordered Hendon to show cause why her ADEA claim should not be dismissed for her failure to allege that her age was the "but-for" cause of her termination, as is required by *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009). (Doc. 18). Hendon has responded to Kamtek's motion and to the court's show cause order.

## DISCUSSION

Because Kamtek's motion for summary judgment, *inter alia*, is a challenge to this court's subject-matter jurisdiction, the court will address that motion first. *See OFS Fitel, LLC v. Epstein, Becker and Green, P.C.*, 549 F.3d 1344, 1352-53 (11th Cir. 2008).

## A. Motion for Summary Judgment

Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must "examine the evidence in the light most favorable to the non-moving party," drawing all inferences in favor of that party. *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000). "[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam) (quoting *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

Kamtek claims that because it was not Hendon's employer it cannot be held liable under any of Hendon's theories. A defendant must be an employer to be liable under Title VII, § 1981, or the ADEA. *See Virgo v. Riviera Beach Assocs., Ltd.*, 39 F.3d 1350, 1359 (11th Cir. 1994); *Fountain v. Metcalf, Zima & Co., P.A.*, 925 F.2d 1398 (11th Cir. 1991); *see also* 29 U.S.C. § 630(f); 42 U.S.C. § 2000e(f). In other words, the court lacks subject-matter jurisdiction over a non-employer defendant under the statutes being invoked by Hendon. *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1242 (11th Cir. 1998).

The Eleventh Circuit "interpret[s] the term 'employer' liberally." *Virgo*, 39 F.3d at 1359. Hendon contends that, while Kamtek was not her **direct** employer, sufficient evidence exists to demonstrate that Kamtek was a **joint-employer** with PSI, thus precluding summary judgment. If "one employer while contracting in

good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer," that defendant may be liable as a joint-employer. *Id.* at 1360 (quoting *Nat'l Labor Relations Bd. v. Browning-Ferris Indus.*, 691 F.2d 1117, 1123 (3d Cir. 1982)). The most important consideration is "the degree of control an entity has over the adverse employment decision." *Llampallas*, 163 F.3d at 1244-45.

Kamtek presents very substantial evidence in support of its contention that it was not Hendon's joint-employer. PSI, not Kamtek, was solely responsible for supervising Hendon, for maintaining her personnel file, and for paying her salary and benefits. Kamtek also claims that it had no involvement in the decision to terminate Hendon and was only made aware of the decision after-the-fact. This assertion, however, runs into the words of the termination notice delivered to Hendon by her admitted employer, PSI. The notice says: "Client [Kamtek] requested restructure of on-site personnel." (Doc. 19-2 at 2). These words could have several meanings. Kamtek itself refers to the notice as "nebulous." (Doc. 21 at 8). Possible meanings can support Kamtek's position that it was not involved in the termination decision, but, importantly, the statement could be construed as "corporate-speak" for Kamtek's instructing or pressuring PSI to fire Hendon.

Kamtek argues that the court should not read the termination

notice in the way suggested by Hendon, and instead should look to a Kamtek employee's affidavit to ascertain the meaning of the ambiguous notice. But such is not the standard to be applied at summary judgment. The court is required to "examine the evidence in the light most favorable to the non-moving party." *Earl*, 207 F.3d at 1365. When evaluated under this strict standard, the termination notice lends support to Hendon's position that Kamtek exercised control over the terms and conditions of her employment, particularly over her termination. The court, therefore, cannot find at the summary judgment stage that Kamtek was not Hendon's joint-employer, an entity over which this court has jurisdiction. Accordingly, at this stage the court will exercise jurisdiction over the action against Kamtek as Hendon's joint-employer.

## B. Motion to Dismiss

When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "'accep[t] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff.'" *M.T.V. v. DeKalb Cty. Sch. Dist.*, 446 F.3d 1153, 1156 (11th Cir. 2006) (quoting *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003)). A complaint must, however, "state a claim to relief that is plausible on its face" if it is to survive such a motion. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Supreme Court has identified two working principles for district courts to follow in ruling on motions to dismiss. "First, the tenet

that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Second, only a complaint that states a **plausible** claim for relief survives a motion to dismiss." *Id.* at 679 (emphasis added). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Hendon's complaint begins with a general statement of facts, followed by three specific counts. Each count, however, contains only an incorporation of the prefatory statement of facts, after which Hendon uses entirely conclusory language upon which she seeks relief. Under *Twombly* and *Iqbal*, the court is required to disregard this conclusory language. This leaves the court with the unenviable, if not impossible, task of discerning on its own exactly how Hendon's alleged facts provide plausibility for each of her three causes of action. The mere fact that an employee is African-American does not open the courthouse door for a Title VII race claim. The mere facts that a person is female and was replaced by a male do not open the door to a Title VII sex claim. The mere

facts that a person was over 40 and was replaced by a younger person do not open the door to an ADEA claim.

The court agrees with Kamtek that Hendon's allegations do not support her claims of race, sex, and/or age discrimination. Instead, Hendon's complaint tells a story of how she was allegedly retaliated against for her association with Arthur Thomas during his disciplinary proceedings and termination. She does not allege facts to demonstrate a plausible claim of how she was discriminated against because of her race, her sex, or her age. Hendon would have this court proceed on a too hopeful inferential "fact": "Because Thomas and Hendon are African-American, one could infer that Kamtek ordered the termination of Hendon in fear that she would lend support to Thomas . . . who was claiming, *inter alia*, race discrimination in employment." (Doc. 19 at 8). Hendon offers no argument but this, and it is not enough.

While the court is required to draw all plausible inferences in favor of the non-movant, it is not permitted to save a complaint by writing entirely new factual allegations into it and drawing favorable inferences from the judicially divined allegations. If Hendon had wished the court to make such a tenuous connection in order to detect race discrimination, she should have alleged that such a connection existed as a fact and not merely suggested the possibility in her response to the motion to dismiss using the words **"one could infer."** *See Bruhl v. Price Waterhousecoopers*

*Int'l*, No. 03-23044-Civ-MARRA, 2007 WL 997362, at *4 (S.D. Fla. Mar. 27, 2007) ("The Plaintiffs cannot supplant the allegations of the [complaint] with new arguments set forth in their response to a motion to dismiss."). Accordingly, Hendon's race claim fails, just as her sex and age claims fail.

Hendon's invocation of *Thompson v. North American Stainless, LP*, 562 U.S. 170 (2011), is unavailing. That case dealt only with a retaliation claim. Hendon's complaint does not contain a retaliation claim, and such a claim was not included in her EEOC charge.

## C. Order to Show Cause

The court would be remiss if it did not address a separate dispositive deficiency that overlappingly eliminates the ADEA aspect of Hendon's complaint. She alleges that she was fired for three separate reasons: her race, her sex, and her age. But, in *Gross*, the Supreme Court held that, to prevail on a claim of age discrimination under the ADEA, "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." 557 U.S. at 176. "Thus, the ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was **the** 'reason' that the employer decided to act." *Id.* (emphasis added). This court has consistently found this requirement to mean that "an employee cannot claim that age is a motive for the employer's adverse conduct and simultaneously claim that there was

**any other** proscribed motive involved." *Culver v. Birmingham Bd. of Educ.*, 646 F. Supp. 2d 1270, 1271-72 (N.D. Ala. 2009) (emphasis added); *see also Donald v. UAB Hosp. Mgmt., Inc.*, No. 2:14-cv-727-WMA, 2015 WL 3952307 (N.D. Ala. June 29, 2015) (Title VII retaliation); *Holley v. Gibco Constr., LLC*, No. 2:14-cv-2277-WMA, 2015 WL 2365580 (N.D. Ala. May 18, 2015) (same); *Savage v. Secure First Credit Union*, No. 2:14-cv-2468-WMA, 2015 WL 2169135 (N.D. Ala. May 8, 2015) (retaliation, ADEA, and ADA); *Montgomery v. Bd. of Trs. of the Univ. of Ala.*, No. 2:12-cv-2148-WMA, 2015 WL 1893471, at *5 (N.D. Ala. Apr. 27, 2015) (retaliation); *Dixon v. Birmingham, Ala.*, No. 2:13-cv-404-WMA, 2015 WL 353162, at *1 (N.D. Ala. Jan. 27, 2015) (ADA); *Ephraim v. Pantry, Inc.*, 899 F. Supp. 2d 1205, 1207-08 (N.D. Ala. 2012) (ADEA); *Gwin v. BFI Waste Servs., LLC*, 718 F. Supp. 2d 1326, 1327 (N.D. Ala. 2010) (ADEA). This court sees no reason to back away from what it has repeatedly said in this line of cases. It shared its "up front" position with Hendon, but Hendon has failed and refused to tailor her complaint to meet *Gross*.

The court is fully aware that other courts have refused to apply *Gross* and its progeny the way this court applies them. The cases cited by Hendon reveal three basic arguments for skirting *Gross* and *Nassar*.

### 1.   **"But-for" causation *is* "sole" causation.**

First, Hendon argues, and some courts have held, that "'but-

for' causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Zann Kwan v. Andalex Group, LLC*, 737 F.3d 834, 846 (2d Cir. 2013). This court, however, finds that the contrary conclusion is the natural and, indeed, the only logical conclusion to be drawn from the Supreme Court's language in *Gross*, in *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517 (2013), and in *Burrage v. United States*, 134 S. Ct. 881 (2014).[2]

As the Supreme Court said in *Gross*, in order to qualify as the "but-for" cause, the alleged cause must be "**the** 'reason' that the employer decided to act." 557 U.S. at 176 (emphasis added). To impose a lesser "but-for" standard would require an entirely incorrect reading of *Gross*, *Nassar*, and *Burrage*. In discussing the but-for standard in *Burrage*, the Supreme Court gave the following examples:

> Thus, "where A shoots B, who is hit and dies, we can say that A [actually] caused B's death, since but for A's conduct B would not have died." LaFave 467–468 (italics omitted). The same conclusion follows if the predicate

---

[2] The court is by no means alone in this finding. *See, e.g.*, *Conner v. Ass'n of Flight Attendants-CWA*, No. 13-2464, 2014 WL 6973298, at *5 (E.D. Penn. Dec. 10, 2014); *Ramos v. Molina Healthcare, Inc.*, 963 F. Supp. 2d 511, 531 (E.D. Va. 2013); *Austin v. Wal-Mart Stores, Inc.*, No. 1:10-CV-3556-TWT, 2012 WL 6194233, at *3 (N.D. Ga. Dec. 11, 2012); *Foust v. Metro. Sec. Servs., Inc.*, 829 F. Supp. 2d 614, 622-23 (E.D. Tenn. 2011); *Whitaker v. Tenn. Valley Auth. Bd. of Dirs.*, No. 3:08-1225, 2010 WL 1493899, at *9 (M.D. Tenn. Apr. 14, 2010).

act combines with other factors to produce the result, so long as the other factors alone would not have done so—if, so to speak, it was the straw that broke the camel's back. Thus, if poison is administered to a man debilitated by multiple diseases, it is a but-for cause of his death even if those diseases played a part in his demise, so long as, without the incremental effect of the poison, he would have lived. *See, e.g.*, *State v. Frazier*, 339 Mo. 966, 974-975, 98 S.W.2d 707, 712-713 (1936).

This but-for requirement is part of the common understanding of cause. Consider a baseball game in which the visiting team's leadoff batter hits a home run in the top of the first inning. If the visiting team goes on to win by a score of 1 to 0, every person competent in the English language and familiar with the American pastime would agree that the victory resulted from the home run. This is so because it is natural to say that one event is the outcome or consequence of another when the former would not have occurred but for the latter. It is beside the point that the victory also resulted from a host of other necessary causes, such as skillful pitching, the coach's decision to put the leadoff batter in the lineup, and the league's decision to schedule the game. By contrast, it makes little sense to say that an event resulted from or was the outcome of some earlier action if the action merely played a nonessential contributing role in producing the event. If the visiting team wound up winning 5 to 2 rather than 1 to 0, one would be surprised to read in the sports page that the victory resulted from the leadoff batter's early, non-dispositive home run.

134 S. Ct. at 888. In each of these situations, the Court demonstrated that there was only **one** "but-for" cause. Take, for example, the proverbial straw that broke the camel's back. The last straw only broke the camel's back because it added its slight weight to the weight of all the preceding straws. Thus, under a loose interpretation of "but-for," each and all of the straws could be considered but-for causes, since without each and all of them the camel's back would not have been broken. **But the Court pointed**

**to the last straw as the sole or but-for cause**. The same is true in the Court's baseball example. The Court explicitly recognized that because of "skillful pitching, the coach's decision to put the leadoff batter in the lineup, and the league's decision to schedule the game," etc., the home team won the game. **But** the Court was not distracted by these other contributing causes such as the "big bang." Instead, it determined that the home run was the **only** and the **but-for** cause of victory.

The Court further clarified the issue when in *Burrage* it rejected the Government's formulation of causation that "would treat as a cause-in-fact every act or omission that makes a positive incremental contribution, however small, to a particular result." *Id.* at 891. While some courts have continued to label their post-*Gross*, *Nassar*, and *Burrage* causation standard as "but-for," in reality they are requiring nothing more than a "positive incremental contribution," since without each contribution, who can say that the result being examined would have been reached. This is no more than what was required by the now-rejected "motivating factor" standard. A standard that the Supreme Court has explicitly rejected can no longer be employed. This court can well understand why ADEA and retaliation plaintiffs do not like *Gross* and *Nassar*, but their criticism of these decisions cannot wish them away. If the Supreme Court has misread the language chosen by Congress, Congress can act to make its intent clear.

14

Dissenting and concurring opinions in these cases confirm this court's understanding that "sole" and "but-for" causation are synonymous. In *Burrage*, Justices Ginsburg and Sotomayor declined to join the majority precisely because they "do not read 'because of' in the context of antidiscrimination laws to mean 'solely because of.'" *Id.* at 892 (Ginsburg, J., concurring in the judgment). *See also Gross*, 557 U.S. at 183 n.4; *Nassar*, 133 S. Ct. at 2546-47. Justices Ginsburg and Sotomayor understood that the majority opinions that they refused to join equated "sole" and "but-for." They wouldn't follow the majority because they read the majority opinions exactly like this court reads them.

The same conclusion follows from the Supreme Court's dealing with situations in which multiple proscribed acts are alleged, each of which is independently sufficient to produce the complained of result. Importantly, there are two things that the Supreme Court did in these seminal cases. First, instead of trying to resolve the question of causal sufficiency in all cases under the *Gross* umbrella, the Court referred to some instances as "rare" and as "exceptions" and refused either to "accept or reject the special rule developed for these cases." *Nassar*, 133 S. Ct. at 2525; *Burrage*, 134 S. Ct. at 890. Second, the Court explicitly found that concurrent causes do **not** qualify as but-for causes. *Burrage*, 134 S. Ct. at 890.

Some courts have relied on a footnote in *McDonald v. Santa Fe*

*Transportation Co.*, 427 U.S. 273 (1976), for the proposition that but-for causation does not equate to sole causation. *See, e.g.*, *Howell v. Morrison Mgmt. Specialists, Inc.*, No. 4:10-cv-1587-RDP, 2013 WL 6568935, at *6 (N.D. Ala. Dec. 13, 2013). The *McDonald* footnote says:

> The use of the term "pretext" in this context does not mean, of course, that the Title VII plaintiff must show that he would have in any event been rejected or discharged solely on the basis of his race, without regard to the alleged deficiencies; as the closing sentence to the quoted passage makes clear, no more is required to be shown than that race was a "but for" cause.

*Id.* at 282 n.10. This footnote of 39 years ago was discussed and distinguished by the plurality in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 240 n.6 (1989), in the context of the Supreme Court's conclusion in that case that the phrase "because of" does not require but-for causation. In arriving at its said conclusion, the *Price Waterhouse* plurality actually **equated** "sole" causation with "but-for" causation, thus contradicting the *McDonald* footnote. *Id.* at 241; *see also id.* at 284 (Kennedy, J., dissenting). Following *Price Waterhouse*, the Court's view of the interplay between sole and but-for causation was murky, that is, until *Gross*, *Nassar*, and *Burrage* came along. Luckily, more clarification of the question came from Congress's passage of the Civil Rights Act of 1991, which effectively abrogated *Price Waterhouse*. *See Nassar*, 133 S. Ct. at 2526. Given the intervening unequivocal change in the law, this

16

court certainly cannot give controlling weight to the *McDonald* footnote.

Finally, Hendon points to *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068 (11th Cir. 1996), for the proposition that but-for causation does not require sole causation. This court held in *Savage* that *McNely* has been "undermined to the point of abrogation by the Supreme Court." 2015 WL 2169135, at *4 (quoting *Santiago-Lugo v. Warden*, — F.3d —, 2015 WL 1936707, at *3 (11th Cir. Apr. 30, 2015)). The court reiterates its *Savage* holding today. In *McNely*, the court held that the ADA's but-for causation requirement was "*not* to mean 'solely because of' . . . [but rather] liability whenever the prohibited motivation makes the difference in the employer's decision." *Id.* at 1076. The Eleventh Circuit later elaborated, finding that "*McNely*'s 'but-for' liability standard is perfectly consonant with the 'motivating factor' language of the [challenged jury] instruction." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1334 (11th Cir. 1999). Under *Gross*, *Nassar*, and *Burrage*, however, this standard did not survive. In *Nassar*, the Supreme Court reversed the Fifth Circuit precisely because it had applied the then-traditional motivating factor standard to a Title VII retaliation claim. Because the Eleventh Circuit in *McNely* equated the concept of "but-for" with the now-rejected "motivating factor" standard, *McNely* is no longer the law of the Eleventh Circuit.

17

**2. The plaintiff cannot escape her burden by claiming her right to plead alternatively.**

Hendon argues, and some courts have held, that regardless of whether but-for causation is synonymous with sole causation, a plaintiff need not elect between claims at the motion stage because she can plead alternatively. *See, e.g.*, *Pearson v. Lawrence Med. Ctr.*, No. 5:12-cv-1064-CLS, 2012 WL 5265774, at *5-*7 (N.D. Ala. Oct. 24, 2012). It is true that "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). But Rule 8(d) does not excuse a plaintiff from pleading facts to support each of the alternative legal theories she is pressing. *Johns v. Blue Cross Blue Shield*, No. 2:08-cv-12272, 2009 WL 646636, at *5 (E.D. Mich. Mar. 10, 2009).

As this court said in *Savage*: "[T]here is a recognized distinction between the pleading of alternative theories of liability and irreconcilable contradictions and concessions as to an essential element of a particular claim." 2015 WL 2169135, at *5. Particularly, in light of *Twombly* and *Iqbal*, in order to satisfy but-for causation, a plaintiff must allege as fact that "there are no proscribed motivations other than [the one alleged]." *Montgomery*, 2015 WL 1893471, at *5. By alleging as fact the existence of a separate proscribed contributing motivation, Hendon concedes that age was not the but-for reason for her termination. Despite Rule 8(d), this failure to allege the but-for fact mandates

18

dismissal. *See Whitaker*, 2010 WL 1493899, at *9 ("Post-*Gross*, it is incongruous to posit such alternate theories because the very presentation of different reasons for an action suggest [sic] that age was not the **sole** reason for the action."); *see also Selby v. Goodman Mfg. Co., LP*, 2014 WL 2740317, at *6 (N.D. Ala. June 17, 2014) (Proctor, J.), and *Selman v. CitiMortgage, Inc.*, 2013 WL 838193, at *13 n.19 (S.D. Ala. Mar. 5, 2013) (Steele, J.). Both cases distinguish between permissible pleading in the alternative and impermissibly conceding the existence of a contract by suing for its breach while simultaneously making an unjust enrichment claim that cannot proceed where there is a contract.

### 3.   But-for causation applies from the outset.

Some courts have taken the position that the but-for causation standard only applies at trial and is inapplicable to motions to dismiss and/or for summary judgment. *See, e.g., Woldetadik v. 7-Eleven, Inc.*, 881 F. Supp. 2d 738, 741-42 (N.D. Tex. 2012).[3] This argument cannot be squared with *Nassar*. The Supreme Court in *Nassar* made known its concern that "claims of retaliation are being made with ever-increasing frequency." 133 S. Ct. at 2531. The Court applied but-for causation, in part, for the purpose of discouraging

---

[3]The Fourth Circuit has made a separate but related argument that *Nassar* is inapplicable to the *McDonnell-Douglas* framework. *See Foster v. Univ. of Md.-E. Shore*, — F.3d —, 2015 WL 2405266 (4th Cir. May 21, 2015). This court addressed that contention in *Donald*, 2015 WL 3952307, at *4-*5.

the filing of frivolous claims "which would siphon resources from efforts by employer, administrative agencies, and courts to combat workplace discrimination." *Id.* at 2531-32. The Court expressed its belief that the absence of but-for causation exposes such claims to dismissal **at the pre-trial stage**. *Id.* at 2532 ("Even if the employer could escape judgment after trial, the lessened causation standard would make it far more difficult to dismiss dubious claims at the summary judgment stage."). Because of the Supreme Court's requirement of a showing of but-for causation before trial, the position that but-for causation does not apply until trial is untenable.

Further, an assertion that but-for causation does not apply at the pleading stage is contrary to the very purpose of pleading, which is to put defendants on notice of the plaintiff's claims and to determine whether the allegations, if true, support a finding of liability. If no liability would result, dismissal, even at the earliest pleading stage, is the proper recourse. As this court said in *Donald*: "There is nothing incongruous or illogical . . . in requiring plaintiffs to meet the causation requirement either at the outset . . . or not at all." 2015 WL 3952307, at *4. Hendon's ADEA discrimination claim, to the extent it can be discerned from her complaint, is so contrary to *Gross* that it cannot be allowed to proceed. She cannot insist upon her age as a cause and at the same time insist that her termination was the product of her race and/or

sex.

## CONCLUSION

For the reasons stated above, Kamtek's motion to dismiss will be granted. This will moot Kamtek's motion for summary judgment. A separate order will be entered.+

DONE this 24th day of July, 2015.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE